CLEMENTE MUELLER, P.A.
218 RIDGEDALE AVENUE
P.O. BOX 1296
MORRISTOWN, NEW JERSEY 07962-1296
(973) 455-8008
Attorneys for Plaintiff
G.A.M.E. Apparel, LLC

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| G.A.M.E. APPAREL, LLC, | CIVIL ACTION |
| Plaintiff, | CASE NO. |
| vs. | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| ANTHONY S. PRISCO, DINA JOHANNEMAN, MATRIX SALES GROUP LLC, JOHN DOE 1-10; and XYZ CORP. 1-10 | |
| Defendants. | |

Plaintiff, G.A.M.E. Apparel, LLC ("G.A.M.E."), by and through its attorneys, Clemente Mueller, P.A., by way of Complaint against defendants, Anthony S. Prisco, Dina Johanneman, and Matrix Sales Group LLC, John Doe 1-10 and XYZ Corp. 1-10 (hereinafter "Prisco", "Johanneman", "Matrix", and/or "Defendants"), avers as follows:

### The Parties

1.      G.A.M.E. is a limited liability company organized and existing under the laws of the State of New Jersey with its principal place of business at 137 S. Broadway, Suite 2A, in South Amboy, New Jersey.   G.A.M.E. is in the business of designing, developing, sourcing, and producing quality apparel for retail customers to be sold in department stores.  G.A.M.E. is owned and owned equally by three entities: 1) Estate of Steven Weiner, 2) Pedro Garcia and 3) John Wortley, Kimberly Nelson, and Phil Dangel.

2.      Defendant, Matrix Sales Group LLC, is a limited liability company organized and existing under the laws of the State of New Jersey with its principal place of business at 2211 Allenwood Road, Wall, New Jersey.

3.      Defendant, Anthony S. Prisco, is an individual living in the State of New Jersey with an address of 3 Fieldgate Court, Holmdel, New Jersey, and is currently the self-proclaimed CEO of Matrix Sales Group LLC, as well as the former CEO of G.I. Apparel Inc.

4.      Defendant, Dina Johanneman, an individual living in the State of New Jersey with an address of 3 Fieldgate Court, Holmdel, New Jersey, and is currently the alleged Owner and member of Matrix Sales Group LLC.

5.      The defendants sued herein as John Doe 1-10 and XYZ Corp. 1-10 are persons and entities unknown to Plaintiff at this time whose acts or omissions are responsible in whole or in part for the harm suffered by plaintiff as alleged herein. Plaintiff will amend this Complaint to add the true names and capacities of the fictitiously-named defendants when the same has been ascertained.

### Jurisdiction and Venue

6.      This Court has subject matter jurisdiction over Plaintiff's causes of action pursuant to the Copyright Act, 17 U.S.C. §101 *et seq.* in that this is an action arising under, and requires interpretation of the Copyright Act.  This action is also brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

7.      The Court has pendent jurisdiction over Plaintiff's claim for tortuous interference pursuant to 28 U.S.C. §1367 in that it arises out of the common nucleus of operative facts that form part of the same case or controversy as plaintiff's declaratory

judgment for non-infringement which has an independent source of federal subject matter jurisdiction.

8.      Venue is proper is this District pursuant to 28 U.S.C. §§ 1391 and 1400 because Defendant's alleged claim of copyright infringement arose in this District and Defendant can be found in this District.

9.      Personal jurisdiction over Defendant is proper in that Defendant does business within the State of New Jersey sufficient to subject it to the personal jurisdiction of this Court.

**Factual Background**

**The Demise of G.I. Apparel, Inc.**

10.      G.I. Apparel, Inc. ("GIA") was owned and operated by Anthony S. Prisco ("Prisco") with business offices at 2211 Allenwood Road, Wall, New Jersey.  Prior to closing its doors, GIA's business was designing, developing, sourcing, and producing apparel for markets such as men and women's wear, as well as children, for various clothing lines.  It employed over 100 fulltime employees including the three managing partners of G.A.M.E.  Its clients included Meijer's, Fred Stores, K-Mart, Wal-Mart, Dollar General, J.C. Penny, and Shopko (hereafter "GIA Customers").

11.      To produce apparel, GIA contracted with various venders and suppliers which provided merchandise to GIA and the printing services to screen print designs on the merchandise that would then be sold to retailers.  The CIT Group ("CIT") acted as the commercial factor for GIA granting financial accommodations to GIA providing credit approval for GIA orders and making advances to GIA so that it could pay its vendors. Two of these vendors were DMG Import LLC ("DMG") and New Buffalo Shirt Factory ("New Buffalo").  DMG contracted with GIA and CIT to manufacture garments in

response to purchase orders received from specifically designated customers. New Buffalo was also contracted with GIA to screen print designs on garments.

12. In March 2008, GIA defaulted in its obligations to CIT whereby CIT pulled all financing to GIA leaving GIA with insufficient working capital to continue its business. Because of GIA's default, several substantial debts were outstanding to numerous creditors, including CIT ($6.2M), DMG ($400K), New Buffalo ($170K), and BYP Corporation of America ($150K). Additionally, several GIA orders had been filled by DMG but not shipped, approximately 400,000 units of merchandise, as such it remained in DMG's possession and unable to ship to GIA's customers due to restrictions in GIA's Customer vendor agreements. As such, CIT retained the rights to this merchandise in DMG's possession pursuant to the contract.

13. On March 28, 2008, all employees, including John Wortley, General Manager, Kimberly Nelson, Director of Apparel, and Phil Dangel, Account Executive, were notified that GIA was closing down due to CIT pulling all financing and leaving the company with insufficient working capital to continue its business. All employees were told to pack up their personal effects and leave the building immediately.

**The Start-Up of G.A.M.E.**

14. On May 1, 2008, John Wortley, Kimberly Nelson, and Phil Dangel entered into a partnership agreement and formed G.A.M.E. Apparel, LLC. G.A.M.E. then hired four graphic designers whose duties consisted of designing custom works of art from a library built from the sketches, clip art, and images retrieved from the public domain, internet research, trend books, and derivatives of other G.A.M.E. designs.

15. Due to the very large financial loss caused to DMG by GIA's default with CIT, DMG sought and received permission from CIT to liquidate the abandoned merchandise in DMG's possession. Upon receiving rights to the merchandise it was then

sold by DMG to G.A.M.E. at a substantial loss.  G.A.M.E. then sold this merchandise to various retailers in an effort to mitigate the loss to DMG.

16.     In addition to selling the merchandise to various retailers, G.A.M.E. began to develop client relationships with several retailers, including Sears Holdings Corporation and Tractor Supply, in which vendor agreements were entered into.  To produce apparel to fulfill these vendor agreements, G.A.M.E. contracted with suppliers, DMG and New Buffalo, to produce merchandise wherein verbal agreements were entered into setting forth price points for production.  (See Vendor and Supplier Agreements attached hereto as **Exhibit 1**).

## The Start-Up of Matrix Sales Group LLC

17.     Matrix is an entity that is owned and operated by Dina Johanneman, who is the wife of Prisco, the former owner of GIA.  Prisco is the managing member and CEO of Matrix.

18.     On May 9, 2008, CIT received $100,000 as consideration for its agreement to release its lien against GIA's intellectual property pursuant to a lien release ("Lien Release") releasing all of GIA's "electronically stored artwork and/or designs utilized for the production of clothing bearing such artwork and/or designs, together with all copyright rights, trademarks, trade dress or goodwill associated therewith or appurtenant thereto."  This agreement was signed by CIT and Anthony Prisco as CEO and Managing Member of GIA.  (See Lien Release attached hereto as **Exhibit 2**.)

19.     On the same day, May 9, 2008, an Asset Purchase Agreement was entered into between Matrix and GIA wherein Matrix purchased from GIA for $10.00 all right, title and interest to the "artwork/designs of [GIA] and rights appurtenant thereto all as set forth in the [CIT] Lien Release."  GIA then delivered to Matrix the media containing the artwork, including a 2-Terra-Bit computer hard drive and all available documentation

relating to the artwork. This agreement was signed by Anthony Prisco, CEO of GIA and Jeffrey Miller, Member and Officer of Matrix.  (See Asset Purchase Agreement attached hereto as **Exhibit 3**.)

20.     Also on May 9, 2008, GIA and Matrix entered into a Bill of Sale and Transfer Statement wherein GIA conveyed and assigned to Matrix the artwork as defined in the Asset Purchase Agreement.  (See Bill of Sale and Transfer Statement attached hereto as **Exhibit 4**.)

21.     There is no schedule of assets attached to the Lien Release or Asset Purchase Agreement setting forth the specific pieces of artwork/designs that were owned by GIA at the time of the transfer to Matrix on May 9, 2008.

22.     Additionally, none of the artwork/designs that were created and developed by GIA prior its closing were registered with the United States Copyright Office, nor did any of the works bear a form of notice.

**Matrix's Assertion of Infringement against G.A.M.E Customers and Suppliers**

23.     On November 18, 2011, Prisco, CEO of Matrix sent a letter to Tractor Supply making a claim for copyright infringement, albeit defective, alleging substantial similarity of the designs.  Defendant demanded that Tractor Supply cease advertising, sales, and shipment of all alleged infringing designs sold to it by G.A.M.E.  Thereafter, communication continued between the parties over the course of several months, wherein Defendant failed to provide Tractor Supply any type of documentation, i.e. copyright registration, to support such bold accusations.  (See November 18, 2011 Letter from Matrix to Tractor Supply attached hereto as **Exhibit 5**.)

24.     On November 22, 2011, Prisco sent a letter to New Buffalo Shirt Factory, similar in nature to the letter sent to Tractor Supply, making a claim for copyright

infringement, albeit defective, alleging substantial similarity of the designs. Within this correspondence it demanded that New Buffalo immediately cease printing and shipping products of all alleged infringing designs sold to it by G.A.M.E. Thereafter, communication continued between the parties over the course of several months, wherein Defendant failed to provide New Buffalo any type of documentation, i.e. copyright proofs, to support such bold accusations. (See November 22, 2011 Letter from Matrix to New Buffalo attached hereto as **Exhibit 6**.)

25. On January 5, 2012, Defendant admitted that no design had been registered pursuant to the Copyright Act. (See January 5, 2012 Letter from Matrix to New Buffalo attached hereto as **Exhibit 7**.)

26. On January 12, 2012, Plaintiff G.A.M.E. filed a lawsuit in the Superior Court of New Jersey alleging tortuous interference by Defendants in connection with the business contracts of G.A.M.E. and its suppliers and vendors, specifically Tractor Supply and New Buffalo Shirt Factory. (See G.A.M.E. State Court Complaint without exhibits attached hereto as **Exhibit 8**.)

27. On January 12, 2012 Defendant Matrix caused one design to be registered with the United States Copyright Office that has been given registration number VA001799253 and later applied to register an additional 21 designs (the "Purported Copyrights"). (See Registration VA001799253 attached hereto as **Exhibit 9**.)

28. On February 3, 2012, Defendant Matrix filed a Complaint in the United States District Court, District of New Jersey alleging copyright infringement of the Purported Copyrights against Tractor Supply Co. and New Buffalo Shirt Factory, Inc., Case No. 3:12-CV-00682-AET-TJB. (See Matrix Federal Complaint attached hereto as **Exhibit 10**.) No copies of the Applications of the Purported Copyrights or the Registration were attached to the Complaint.

**Defendants Alleged Infringed Designs**

29.     The designs alleged to have been infringed are common designs found in tee shirts currently for sale in a multitude of retail outlets by a number of manufacturers that have been sold for several years by numerous companies.

30.     Defendant Matrix alleges in its Complaint, Case No. 3:12-CV-00682-AET-TJB, that the Purported Copyrights have been infringed by New Buffalo Shirt Factory when it screen-printed tee shirts for G.A.M.E. Apparel, Inc.  (Id. at ¶¶ 14-22).

31.     Defendant Matrix alleges in its Complaint, Case No. 3:12-CV-00682-AET-TJB, that the Purported Copyrights have been infringed by Tractor Supply when it sold to the public tee shirts printed by New Buffalo Shirt Factory.  (Id. at ¶¶ 24-27).

32.     Plaintiff did not infringe upon the Purported Copyrights of Defendant Matrix as the G.A.M.E. designs were created by designer/illustrators employed by G.A.M.E. on a work-for-hire basis whose development process to create a design consisted of internet research, field research, trend books, and selling references.  With these resources G.A.M.E. combines elements together to create one image through the merger of several ideas, concepts and trends.

33.     G.A.M.E. copyrights consist of the following designs alleged to have infringed the Defendants Purported Copyrights that were created and published in the United States and consist of visual artwork created on a work-for-hire basis by the following employees:

| G.A.M.E COPYRIGHT TITLE | G.A.M.E. EMPLOYEE/ AUTHOR | G.A.M.E. DATE OF CREATION | G.A.M.E. DATE OF 1st PUBLICATION |
|---|---|---|---|
| STAYS IN BARN (color Fat Green) | Brett Grossmann | 11/18/2008 | 3/4/10 |
| TRADE TRACTOR | Brett Grossmann & John Wortley | 08/07/2009 | 3/4/10 |

| | | | |
|---|---|---|---|
| BRAVE EAGLE | Brett Grossmann | 09/03/2008 | 3/4/10 |
| WE THE EAGLE | Brett Grossmann | 04/20/2009 | 3/4/10 |
| THRILL HUNT DEER | Brett Grossmann | 04/09/2009 | 5/27/10 |
| WHITETAIL SIDE | Chris Bennett | 05/31/2008 | 3/4/10 |
| PINATA | Chris Raimo | 09/10/2008 | 5/27/10 |
| FREEDOM EAGLE | Chris Bennett | 07/01/2009 | 3/4/10 |
| TRUCKS AND BUCKS | Brett Grossmann | 05/09/2009 | 5/27/10 |
| EAGLE AC | Chris Bennett | 10/02/2008 | 3/4/10 |
| REEL LUCKY | Brett Grossmann | 10/09/2008 | 5/27/10 |
| GEORGIA FOOTBALL | Brett Grossmann | 08/20/2010 | 9/8/10 |
| NC BASKETBALL | Brett Grossmann | 08/20/2010 | 9/8/10 |
| ALL COWBOY | Brett Grossmann | 01/21/2009 | 9/8/10 |
| NY FISHING | Brett Grossmann | 08/14/2010 | 9/8/10 |
| TRADE HUSBAND | Brett Grossmann & John Wortley | 02/25/2010 | 3/4/10 |
| HORSES | Chris Bennett | 02/25/2010 | 3/4/10 |
| RHINESTONE COWGIRL | Chris Bennett | 02/25/2010 | 3/4/10 |
| STAYS IN BARN (Color Pink) | Brett Grossmann | 03/26/2010 | 5/27/10 |
| LIVE LOVE RIDE | Brett Grossmann | 06/08/2010 | 9/8/10 |
| LIVE LOVE SANDALS | Brett Grossmann | 11/13/2009 | 3/4/10 |

34.    Sufficient differences in format, design, presentation, and "feel" exist between Plaintiff's designs and Defendants Purported Copyrights to be evident to an ordinary person browsing and comparing the designs.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment of Non-Infringement)

35.     Plaintiff hereby incorporates each and every allegation contained in paragraph 1 through 34 as if fully set forth in this paragraph.

36.     This claim for declaratory judgment arises under the copyright laws of the United States, Title 17 United States Code.

37.     Defendant has caused one design to be registered with the United States Copyright Office that has been given registration number VA 001799253 and has applied to register certain designs as set forth in paragraph ¶ 9 of the Complaint filed by Defendant Matrix, Case No. 3:12-CV-00682-AET-TJB.  (See **Exhibits 9 and 10**).

38.     On November 18, 2011, Defendants sent a letter to Tractor Supply accusing it of infringing its Purported Copyrights.  Therein, Defendants demanded that Tractor Supply and its customer, G.A.M.E., cease and desist from advertising, sales, and shipment of all alleged infringing designs sold to it by G.A.M.E. or otherwise dealing with the Purported Copyrights, and also threatened to file suit against Tractor Supply. Correspondence continued thereafter between the two companies.  (See **Exhibit 5** *and infra*).

39.     On November 22, 2011, Defendants sent a letter to New Buffalo Shirt Factory accusing it of infringing its Purported Copyrights.  Therein, Defendants demanded that New Buffalo Shirt Factory and its customer, G.A.M.E., cease and desist from printing and shipping products of all alleged infringing designs sold to it by G.A.M.E. or otherwise dealing with the Purported Copyrights and also threatened to file suit against New Buffalo Shirt Factory.  Correspondence continued thereafter between the two companies.  (See **Exhibit 6**).

40.     Plaintiff contends that Defendant Matrix's claim of copyright infringement is without merit and that it has not infringed upon any valid copyright owned by Defendant Matrix.

41.     Plaintiff is the actual and beneficial owner of the alleged infringed designs, and did not infringe any of the Purported Copyrights.

42.     Defendant did not independently develop the Purported Copyrights.

43.     Defendant bears the burden of proof as to its infringement claims and all other claims asserted by it against Plaintiff.  By filing this declaratory judgment action, Plaintiff does not subject itself to bearing the burden of proof.

44.     An actual controversy has arisen and now exists between Plaintiff and Defendant, within the meaning of 28 U.S.C. §§ 2201 and 2202, concerning Defendant's claim that Plaintiff has infringed and is continuing to infringe upon the Purported Copyrights.

45.     Plaintiff is entitled to a declaratory judgment of its rights and duties and judgment declaring that: (a) it has not infringed any copyright of Defendant Matrix relating to the alleged infringed designs, (b) any registration which purports to confer copyright protection of the alleged infringed designs is invalid; (c) Plaintiff has not infringed upon any of the Purported Copyrights and is the owner of any copyrights and intellectual property thereto; and (d) that Defendant Matrix has falsely registered the Purported Copyrights with the United States Copyright Office and should be fined $2,500 pursuant to 17 U.S.C. § 506(e).

46.     A judicial determination is necessary and appropriate at this time under the circumstances in order for the parties to ascertain their rights and obligations.

47.     This matter is also ripe for adjudication, as Defendant Matrix's lawsuit against Tractor Supply Co. and New Buffalo Shirt Factory, Inc., Case No. 3:12-CV-

00682-AET-TJB, remains active and a declaratory judgment would be useful in the present case, as it would clarify the rights of the respective parties with respect to an issue of Federal Copyright Law that is essential for an ultimate determination of the Defendant's matter against Tractor Supply Co. and New Buffalo Shirt Factory, Inc.

**Prayer for Relief**

**WHEREFORE,** Plaintiff prays for judgment in its favor and against Defendant Matrix as follows:

A.      For a declaratory judgment declaring that: (i) Plaintiff has not infringed any copyright of Defendant Matrix relating to the alleged infringed designs, (ii) any registration which purports to confer copyright protection of the alleged infringed designs is invalid; and (iii) Plaintiff has not infringed upon any of the Purported Copyrights and is the owner of any copyrights and intellectual property thereto; and (iv) that Defendant has falsely registered the Purported Copyrights with the United States Copyright Office and shall be punished and fined pursuant to 17 U.S.C. §§ 506(a) and 506(e).

B.      For an award of attorney's fees pursuant to § 505 of the Copyright Act and for costs.

C.      For such further relief as the Court deems just and proper.

**SECOND CLAIM FOR RELIEF**

**(Tortuous Interference)**

**Factual Background relative to this Claim**

**Tortuous Interference by Matrix of G.A.M.E Customers and Suppliers**

**A.      Tortuous Interference by Matrix of Sears**

48.      On November 16, 2011, Prisco, CEO of Matrix sent a letter to Sears making false accusations of infringement by G.A.M.E.  Within this correspondence it

demanded that Sears immediately cease advertising and sales of all alleged infringing designs sold to it by G.A.M.E. Additionally, Prisco demanded that Sears provide Matrix with composites of material purchased, purchasing or plans to purchase from G.A.M.E. from 2008 to present. Important to note is the fact that defendants Prisco and Matrix fail to provide Matrix any type of documentation, i.e. copyright proofs, to support such bold accusations. (See November 16, 2011 Letter from Matrix to Sears attached hereto as **Exhibit 11**.)

49. On November 22, 2011, Sears responded to Prisco and Matrix acknowledging receipt of the demands, and advising that they were investigating his claims. (See November 22, 2011 Letter from Sears to Matrix attached hereto as **Exhibit 12**.)

50. On December 8, 2011, in what is best described as harassment, Prisco again contacted Sears making demands that all goods purchased from G.A.M.E. be sequestered immediately. Again Prisco fails to provide any source of documentation to support his allegations. (See Letter from Matrix to Sears attached hereto as **Exhibit 13**.)

51. On December 29, 2011, in another attempt to obtain information to support his claim, Prisco sent a harassing email to Sears demanding an immediate response. (See December 29, 2011 Letter from Matrix to Sears attached hereto as **Exhibit 14**.)

**B.     Tortuous Interference by Matrix of Tractor Supply**

52. On November 18, 2011, Prisco, CEO of Matrix sent a letter to Tractor Supply making false accusations of infringement by G.A.M.E. Within this correspondence it demanded that Tractor Supply immediately cease advertising and sales of all alleged infringing designs sold to it by G.A.M.E. Additionally, Prisco demanded

that Tractor Supply provide Matrix with composites of material purchased from G.A.M.E. from 2008 to present.  Important to note is the fact that defendants Prisco and Matrix fail to provide Tractor Supply any type of documentation, i.e. copyright proofs, to support such bold accusations.  (<u>See</u> **Exhibit 5**).

53.     On December 14, 2011, Tractor Supply responded to Prisco and Matrix acknowledging receipt of the demands, and tendered the defense of the matter to G.A.M.E.  Thereafter, on December 15, 2011, Tractor Supply notified G.A.M.E. of same. (<u>See</u> Letter from Tractor Supply to Matrix attached hereto as **Exhibit 15**.)

54.     On December 19, 2011, Prisco again contacted Tractor Supply making false assertions and demands of Tractor Supply that are the equivalent of harassment. Additionally the derogatory comments relating to G.A.M.E. are another attempt to spoil and cast doubt on the business relationship between Tractor Supply and G.A.M.E.  Again defendants Matrix and Prisco fail to provide any source of documentation to support the allegations.  (<u>See</u> December 19, 2011 Letter from Matrix to Tractor Supply attached hereto as **Exhibit 16**.)

55.     Due to the failure of Matrix to provide any documentation supporting the allegations of the alleged infringement claims, Tractor Supply requested such proof.  In response, on January 3, 2012, Prisco on behalf of Matrix provided to Tractor Supply documentation regarding the Bill of Sale and Transfer Agreement, and Lien Release of CIT.  No further documentation regarding ownership of the alleged infringed designs, i.e. dates of creation, name of designer, any type of agreement that transferring designers rights to G.I.A., etc. (<u>See</u> January 3, 2012 Letter from Matrix to Tractor Supply attached hereto as **Exhibit 17;  <u>see also</u> Exhibits 3 and 4.**)

56.     Thereafter, on January 5, 2012, Matrix provided the Asset Purchase Agreement to Tractor Supply, falsely asserting that G.A.M.E. has not disputed Matrix

ownership.  Finally, Matrix again sought privileged communications between G.A.M.E. and Tractor Supply.  (See January 5, 2012 Letter from Matrix to Tractor Supply attached hereto as **Exhibit 18**;  see also **Exhibit 2**.)

57.    Finally, on January 9, 2012, Matrix admitted to the inability to provide any sort of documentation to Tractor Supply as to copyright proof, i.e. date of creation, designer, and source of material.  (See January 9, 2012 Letter from Matrix to Tractor Supply attached hereto as **Exhibit 19**.)


**C.    Tortuous Interference by Matrix of DMG**

58.    On December 8, 2011, Prisco and Matrix sent an email to owner/operator of DMG, Morty Klein, making false accusations of infringement by G.A.M.E.  Morty Klein is the representative for the Estate of Steven Weiner, which is a 1/3 owner in G.A.M.E.  Within this correspondence it is demanded of Mr. Klein that The Estate of Steven Weiner immediately cease funding G.A.M.E. Again, Prisco fails to provide any type of documentation, i.e. copyright proofs, to support such bold demands to defund G.A.M.E.  (See December 8, 2011 First Email from Matrix to Klein attached hereto as **Exhibit 20**.)

59.    On the same day, December 8, 2011, another email was sent to Morty Klein wherein Prisco refuses to discuss the matter with Mr. Klein all the while spewing derogatory comments directed at G.A.M.E., alleging that a lawsuit relating to copyright infringement would bankrupt the company.  Further, Prisco demands that Klein provide evidence of mitigation while asserting threats of personal litigation against Klein and corporate litigation against Dillion Yarn, Klein's employer.  (See December 8, 2011 Second Email from Matrix to Klein attached hereto as **Exhibit 21**.)

60.     On December 29, 2011, Prisco telephoned Morty Klein leaving a voicemail.  On that same day, Prisco again contacted Klein seeking information with the implication there would be consequences if he did not respond.  (See December 29, 2011 Email from Matrix to Klein attached hereto as **Exhibit 22**.)

61.     On January 11, 2012, Prisco sent an email that can be best described as an attempt to black mail Morty Klein.  Again, false assertions of copyright are claimed by Prisco against G.A.M.E.  Prisco attempts to offer immunity to Morty Klein and Dillion Yarn from litigation, if he agrees to pay Prisco directly for the alleged infringing goods immediately. Finally, Prisco concludes his email with the threat of naming Morty Klien personally and Dillion Yarn.  (See January 11, 2012 Email from Matrix to Klein attached hereto as **Exhibit 23**.)

62.     Correspondence continues to occur between Prisco and Morty Klein wherein threats of criminal liability continue to be asserted. (See Email to Counsel regarding Text attached hereto as **Exhibit 24**.)

**C.      Tortuous Interference by Matrix of New Buffalo**

63.     On November 22, 2011, Prisco sent a letter to owner/operator of New Buffalo, similar in nature to the letter sent to Tractor Supply, making false accusations of infringement by G.A.M.E.  Within this correspondence it demanded that New Buffalo immediately cease printing and shipping products of all alleged infringing designs sold to it by G.A.M.E.  Additionally, Prisco demanded that New Buffalo provide Matrix with composites of material purchased from G.A.M.E. from 2008 to present, as well as providing information as to all retailers shipped to, likely in an affect to harm the business relationships of those customers as well.  Once again, important to note is the

fact that defendants Prisco and Matrix fail to provide New Buffalo any type of documentation, i.e. copyright proofs, to support such bold accusations.  (See **Exhibit 6**.)

64.    In a follow-up to a telephone conversation, Prisco sent an email dated November 30, 2011, to New Buffalo seeking confidential information of G.A.M.E. to be disclosed to Matrix relating to G.A.M.E. designs prior to printing occurring.  In exchange for New Buffalo breaching contractual relations with G.A.M.E., New Buffalo is offered immunity as to any potential action Matrix would have against New Buffalo.  (See November 30, 2011 Email from Matrix to New Buffalo attached hereto as **Exhibit 25**.)

65.    On December 14, 2011, Prisco contacted New Buffalo making more false assertions, seeking that New Buffalo put G.A.M.E. on notice for indemnification related to the alleged infringement.  Within Prisco demands that no further printing or shipping of G.A.M.E. apparel be done.  To support his claim, Prisco encloses the Bill of Sale and Transfer Statement, and Lien Release of CIT.  No further documentation regarding ownership of the alleged infringed designs, i.e. dates of creation, name of designer, any type of agreement that transferring designers rights to G.I.A., were provided in support of the baseless claims.  (See December 14, 2011 Letter from Matrix to New Buffalo attached hereto as **Exhibit 26**;  see also **Exhibits 2, 3 and 4**.)

66.    On December 29, 2011, Prisco sent another harassing communication wherein it disparages G.A.M.E as well as New Buffalo for working with G.A.M.E.  In threatening New Buffalo for failing to cooperate, Prisco and Matrix threaten litigation personally against the owner, as well as litigation against New Buffalo.  (See December 29, 2011 Letter from Matrix to New Buffalo attached hereto as **Exhibit 27**.)

67.    Finally, on January 5, 2012, Prisco communicated again with New Buffalo admitting it failed to register the designs pursuant to the Copyright Act.  Again, New

Buffalo is threatened with litigation for its business dealings with G.A.M.E.   (See **Exhibit 7**.)

### Damage to G.A.M.E. Caused by Matrix's Tortuous Interference

68.     At no time prior to these letters being sent by Matrix to G.A.M.E. customers and suppliers did Matrix notify G.A.M.E. directly to cease and desist of current and future alleged "infringement".   Instead, G.A.M.E. was notified for the first time by their customers and suppliers being threatened with baseless accusations asserted by Matrix.

69.     As a result of these perceived threats of legal action against G.A.M.E. customers and suppliers by Matrix, G.A.M.E.'s customer relations have been and continue to be irreparably harmed.

70.     On December 6, 2011, counsel for G.A.M.E. responded to the Matrix's clear intent to harm G.A.M.E.'s customer and supplier relationships by seeking copyright proofs and demanding that Prisco cease and desist from further communication with G.A.M.E. customers and suppliers.   (See December 6, 2011 Letter from G.A.M.E. Counsel to Matrix attached hereto as **Exhibit 28**.)

71.     In response, Prisco sent a letter to G.A.M.E. counsel on December 13, 2011, enclosing documents related to the sale of GIA to Matrix and the Lien Release but fails to provide any proof of ownership to the alleged artwork being infringed upon. Rather, the letter is filled with disparaging remarks against G.A.M.E. and threats to issue a second round of communication to G.A.M.E. customers and suppliers. (See December 13, 2011 Letter from Matrix to G.A.M.E. counsel attached hereto as **Exhibit 29**; see also **Exhibits 2, 3 and 4**.)

72.     Making good on its threat, a second round of threatening communication was sent to G.A.M.E. customers and suppliers from Matrix.  (See *supra*).  Sears wrote to G.A.M.E. on December 30, 2011 referencing Prisco communications on behalf of Matrix, as such Sears advised G.A.M.E. in accordance with their agreement, they tendered the defense of the matter to G.A.M.E. and sought indemnification of this matter. At this point in time, the contractual relationship between G.A.M.E. and Sears has been and will continue to be irreparably harmed. (See December 30, 2011 Letter from Sears to G.A.M.E. attached hereto as **Exhibit 30**.)

73.     Due to the continued harassment and threats by Matrix and Prisco towards Tractor Supply, on January 5, 2012, Tractor Supply pursuant to the Vendor Agreement with G.A.M.E. tendered the defense of the matter to G.A.M.E. as well as opened an investigation requesting all documents to substantiate G.A.M.E.'s rights in the intellectual property in the goods sold to Tractor Supply.   At this point in time, the contractual relationship between G.A.M.E. and Tractor Supply has been and will continue to be irreparably harmed. (See January 5, 2012 Letter from Tractor Supply to G.A.M.E. attached hereto as **Exhibit 31; see also Exhibit 1**.)

74.     Due to the continued harassment and threats by Matrix and Prisco towards New Buffalo, on February 13, 2012, New Buffalo tendered the defense of the matter to G.A.M.E. At this point in time, the contractual relationship between G.A.M.E. and New Buffalo has been and will continue to be irreparably harmed. (See February 13, 2012 Correspondence from New Buffalo to G.A.M.E. attached hereto as **Exhibit 32**.)

**75.**     As a result of the harassing and derogatory communications sent by Defendants Prisco, Johanneman, and Matrix to G.A.M.E. customers and suppliers, G.A.M.E. has suffered irreparable harm.

## SECOND CLAIM FOR RELIEF

### (Tortuous Interference)

76.     Plaintiff hereby incorporates each and every allegation contained in paragraph 1 through 75 as if fully set forth in this paragraph.

77.     G.A.M.E. is in possession of vendor agreements with customers, Sears and Tractor Supply, as well as suppliers, DMG and New Buffalo, setting forth a reasonable expectation of economic advantage.  The Agreements serve a legitimate purpose in that it protects the customer relationships, and goodwill provided to customers and suppliers by G.A.M.E.

78.     Defendants Prisco, Johanneman, and Matrix, have sent numerous harassing communications to G.A.M.E. customers and suppliers alleging false accusations of copyright as well as asserting defamatory business remarks against G.A.M.E.

79.     As a result of the harassing and derogatory communications sent by Defendants Prisco, Johanneman, and Matrix to G.A.M.E. customers and suppliers, Defendants Prisco, Johanneman, and Matrix have interfered and inflicted harm intentionally and with malice against G.A.M.E.'s business relationships.

80.     As a result of the harassing and derogatory communications sent by Defendants Prisco, Johanneman, and Matrix to G.A.M.E. customers and suppliers, Defendants Prisco, Johanneman, and Matrix have interfered and inflicted harm negligently and recklessly against G.A.M.E.'s business relationships.

81.     The business relationships between G.A.M.E. and its customers and suppliers has suffered actual or prospective loss caused by the tortuous interference of Defendants Prisco, Johanneman, and Matrix.

82.     G.A.M.E. has suffered damage caused by the loss of actual or prospective gain caused by the tortuous interference of Defendants Prisco, Johanneman, and Matrix.

83.     As a direct and proximate result of Defendants Prisco, Johanneman, and Matrix's tortuous interference in the business relationships with G.A.M.E. customers and suppliers, G.A.M.E. seeks compensatory and punitive damages, as well as attorneys fees.

84.     As a direct and proximate result of Defendants Prisco, Johanneman, and Matrix's tortuous interference in the business relationships with G.A.M.E. customers and suppliers, G.A.M.E. has and will continue to suffer irreparable harm and injury that cannot be compensated by money damages alone.

WHEREFORE, G.A.M.E. seeks that judgment on all Counts of the Verified Complaint against the Defendants, and each of them, as follows:

A.     For compensatory damages;

B.     For an award of incidental, punitive and exemplary damages in an amount sufficient to deter such conduct by the Defendants in the future;

C.     For reasonable attorneys' fees and costs of suit incurred herein; and

D.     For such other and further relief as the Court deems just and proper.


CLEMENTE MUELLER, P.A.
Attorneys for Plaintiff


By:   /s/Jonathan Clemente
       JONATHAN CLEMENTE
       A Member of the Firm

Dated:  March 2, 2012